*THE NAVAJO NATION*
Petitioner-Appellant
*vs.*
*Alonzo ARVISO*
Respondent-Appellee

In the Supreme Court of the Navajo Nation

No. SC-CV-14-05

August 11, 2005

---

Louis Denetsosie, Jim Fitting, and Danielle Her Many Horses, Window Rock, Navajo Nation, for Petitioner-Appellant.

Alonzo Arviso, Crownpoint, Navajo Nation, pro se, for Respondent-Appellee.

Before YAZZIE, Chief Justice, and FERGUSON and SLOAN, Associate Justices.

This case concerns the dismissal of a forcible detainer action against an occupant of a business site property. We vacate the decision and remand for further proceedings.

## I

The relevant facts are as follows. Bess and Arturo Arviso were the lessees to a twenty-five year business site lease with the Navajo Nation (Nation). The lease authorized the lessees' use of Navajo Nation trust land to operate a gas station in Crownpoint. The lease, which did not include a renewal or renegotiation clause, expired in October 2001. Bess Arviso died in 1996 and Arturo Arviso died in 2002 shortly after the lease term expired. Alonzo Arviso (Alonzo), son to the former lessees, currently uses the business site without a lease agreement. After the lease expired, Alonzo made some attempt with the Bureau of Indian Affairs to discuss the creation of a lease agreement, but no agreement was ever made.

The Nation file a forcible detainer action under the forcible entry and detainer statute, 16 N.N.C. §§ 1801 *et seq.* (1995), to evict Alonzo and his brother from the property and to claim rent and interest. The Nation settled with the brother who is now off the premises. After a hearing, the Crownpoint District court

dismissed the Nation's complaint because the court believed the Defendant had rights to the land as a "successor" to the lease as that term is used in section 34 of the expired lease, and that the Nation did not evict him properly based on those rights. This appeal followed.

## II

The issues are: (1) whether the son of former lessees who continued to operate a business upon a business site after the death of the lessees is a "successor" under section 34 of a standard lease when the former lessees did not transfer their leasehold interest prior to the expiration of the lease; (2) assuming he is not a successor, whether the Navajo may request eviction through the forcible entry and detainer action; (3) whether the alleged failure to follow k'é by failing to negotiate a lease renewal is a defense to such eviction; and (4) assuming eviction is proper, whether the Nation may collect unpaid rent from a person who is not a party to the lease.

## III

Each of the issues before this Court, as stated above, are legal questions. This Court reviews questions of law de novo. Judy v. White, 8 Nav. R. 510, 528 (Nav. Sup. Ct. 2004). We give no deference to the lower court, and review the questions based on our interpretation of the relevant law.

## IV

This Court notes that both parties based their arguments on the assumption that Alonzo is a successor to the expired business lease between the Nation and Bess and Arturo Arviso. The District Court made the same conclusion, ruling that Alonzo therefore had a contractual right to a renewal that was wrongly denied by the Nation.

Although all parties involved assumed Alonzo was a successor, we conclude he is not. The procedure for creating a successor interest is outlined in the lease.

> The Lessee shall not ... transfer this lease or any right to own and interest in this lease without written approval of the Lessor ... No such transfer shall be valid or binding without said approval, and then only upon condition that the sublessee, assignee, or other successor in interest ... shall agree in writing to be bound by each and all of the covenants and conditions of the lease.

Lease, § 11. Once a successor is properly established, Section 34 of the lease provides:

> This lease and the covenants, conditions and restrictions hereof shall extend to and be binding upon the successors, heirs, assigns, executors, and administrators of the parties hereto.

> There is no evidence that the lessor Nation, Bess and Arturo Arviso, or

Alonzo ever signed documents during the lease term transferring over "all of the covenants and conditions of the lease" to Alonzo. Because Alonzo did not contract for the full responsibilities of the lease in order to become a successor, as prescribed by the lessor and lessees in the lease terms, he is not a successor party to the lease.[1] The question is then whether the Nation may evict him by a forcible entry and detainer action based on this status.

V

A

That Alonzo is not a successor means that the Navajo Nation incorrectly filed a forcible detainer action against Arviso to remove him from its property. Based on Alonzo's status, he cannot be subject to a forcible detainer action under the forcible entry and detainer statute. 16 N.N.C. §1801(C)(1) (1995). Section 1801 applies detainer actions to tenants "at will or by sufferance." A "tenancy at will" occurs when land is held by a party with the landlord's consent, but without fixed terms; and a "tenancy by sufferance" occurs when a tenant once had lawful consent to be a tenant, but then unlawfully remains on the property. Blacks Law Dictionary 1477 (7th ed. 1999). Alonzo is neither, as stated above, because he is not a successor to the lease and occupies the property without the consent of the Nation.

Although the Nation filed the wrong type of action, a different sub-section of Section 1801 is applicable using a "forcible entry" action. Under Section 1801(B) (1), a "forcible entry" occurs when an entry is made "without the consent of the person having the actual possession." In this case, the Nation has "actual possession"[2] and the Nation has not consented for Arviso to use its land for business purposes.[3] This Court has held that the statute "is designed to address occupancy by trespass or squatting and other wrongful possession of land." *Burnside v. Thriftway Markteing Corp.* 7 Nav. R. 152, 155 (Nav. Sup. Ct. 1995). The

[1] The lower court also held that because Alonzo is a successor, the lease hold-over provision (Section 29) would require the Nation to utilize the default procedures of the lease. The court clearly erred in this interpretation. Section 29 reads as follows:

> Holding over by the Lessee after the termination of this lease shall not constitute a renewal or extensions thereof or give the Lessee any rights hereunder or in or to the leased premises. Lessee agrees to remove all property removable under the terms of this lease within sixty (60) days after termination of this lease or pay a daily rental computed at the rate of double the daily rental charged during the year immediately following the termination date of the lease until said property is removed.

Alonzo has never been a lessee and therefore Section 29 does not apply to him. Even if he was a successor, Section 29 clearly states that holding over cannot create a right of renewal.

[2] When a lease expires the business site reverts back to the Navajo Nation.

[3] The record also reveals that the Crownpoint Chapter has passed resolutions asking for Alonzo's eviction.

Nation may proceed against Alonzo for eviction from the business site property, and Alonzo will have the burden of establishing some defense that this Court will recognize. For judicial economy and the guidance given herein, this Court will not dismiss the case and considers this matter as a forcible entry action under 16 N.N.C. §1801(B)(1). *See Navajo Housing Authority v. Dana*, 5 Nav. R. 157, 160 (Nav. Sup. Ct. 1987).

B

The Crownpoint District Court declined to evict Alonzo because it concluded the Nation waited too long (over twenty-seven years) to demand rent and demand that Alonzo quit the premises. The court also determined that pursuant to the Navajo principle of *k'é* (which the court characterized, in application, as a covenant of good faith and fair dealing), the Nation should have not been so "aggressive" in its demands and should have been flexible enough to seek a solution ("The Way Out", or *ch'ihónít'i'*), including attempts to negotiate a new lease. However, the Nation argues, among other things, that *k'é* cannot create a lease, but that, pursuant to Navajo Nation statutory laws (1) only the Economic Development Committee of the Navajo Nation Council can authorize a business site lease,[4] and (2) that the Navajo Business and Procurement act prohibits a business site lease to Alonzo because of his indebtedness to the Nation. The Nation also maintains that, pursuant to 25 U.S.C. § 415 (2000), only the Federal government can create a lease. Because we come to the same outcome under *Diné bí beenahaz'áanii* that Alonzo does not have the right to occupy the property, we are not required to resolve any alleged conflict or establish supremacy between *k'é, Diné bí beenahaz'áanii*, federal and Navajo statutory law.

*Diné bí beenahaz'áanii* has application to all facets of Navajo life. In *Fort Defiance Housing Corporation v. Lowe*, 8 Nav. R. 463, 473–74 (Nav. Sup. Ct. 2004) this Court applied these laws in the context of the eviction of tenants from their *hooghan*. Today, we address the application of these laws in an eviction from a business site.

Over the years Navajo laws have been enacted to regulate the use of Navajo lands for business purposes. *See, e.g.,* 5 N.N.C. §§ 2301 *et seq.* (1995). The Chapters are now adopting land use plans. The decision of the people through their local and national governments on how to use particular tracts of land is premised upon the "importance of *k'é* to maintaining social order." *Atcitty v. District Court for the Judicial of Window Rock*, 7 Nav. R. 227, 230 (Nav. Sup. Ct. 1996). A land use decision by the people through their governments is the balance struck between the individual land user and the needs and desires of the community. As this Court stated in *Atcitty*, "this is a part of the broader Navajo traditional principle of freedom with responsibility. An individual has much freedom in Navajo society, but that freedom must be exercised with respect for self, family, clan

---

4  The Nation further argues that because under 7 N.N.C. § 204(A) Navajo courts do "not have the power to alter, rescind, nullify, or contradict Navajo statutory law," *k'é* (and generally *Diné bi beenahaz'áanii*) cannot do the same.

relatives, and the community at large." 7 Nav. R. at 230 n. 2. The cooperation expected between individuals and the community is also expressed in the Nation's legislative recognition of the place and application of the fundamental laws of the people, where the Navajo Nation Council recognized that *Diné Bi beenahaz'áanii* teaches that the rights and freedoms of the individual are not the only considerations. Resolution No. CN-69-02, Exhibit A § 2(A),(B) (November 13, 2002). The rights and freedoms of the people as a whole must also be recognized. *See Tome v. The Navajo Nation,* 4 Nav. R. 159, 161 (Nav. Ct. App. 1983).

The statutory laws of the Nation and the ordinances or resolutions of the Chapters are thus the regulatory scheme for land use set by Navajo governments. Individuals, such as Alonzo, may not change these laws unilaterally or may not take such actions as will "jeopardize the interests of the Navajo Nation in the land." *Johnson v. Dixon,* 4 Nav. R. 108, 112 (Nav. Ct. App. 1983).

Because the parcel in question is Navajo business site land, Alonzo has no right to occupy this Navajo property for business purposes without being a party to a lease. The lower court erred in holding that *k'é* can create such a right which culminates in an "equitable lease." Unlike a residential land situation, in which a home "in the context of Navajo custom and tradition is more than just a dwelling place," *Lowe,* 8 Nav. R. 463, 475, there is no comparable interest held by individuals using land owned by the collective Navajo people for commercial purposes. The lower court's decision that Alonzo possessed an "equitable lease" is essentially a determination that Alonzo has gained a right of possession comparable to "title" to a tract of land. The concept that an individual can gain an "equitable lease" for business purposes is counter to the long established principle that no individual can gain any prescriptive right in land belonging to the Nation or in land dedicated to a community use. *Yazzie v. Jumbo,* 5 Nav. R. 75, 77 (Nav. Sup. Ct. 1986).

Moreover, the collective Navajo people, who have chosen to utilize their common land for economic benefit, should be respected under *k'é.* Alonzo did not operate under *k'é* when occupying and using Navajo land without invitation or compensation. Therefore, *k'é* does not mandate an attempted negotiation for a "renewal" when the alleged lessee has no underlying right to the property and has operated without respect for the community. As long as the Nation followed the procedures laid out in the forcible entry and detainer statute, allowing Alonzo to be heard by the court, there is no additional requirement under *k'é* to perfect eviction. The Nation under the Forcible Entry and Detainer statute is only required to show that the defendant's right of possession terminated, the Nation is entitled to possession and the Nation has made a written demand for possession. *Burnside* 7 Nav. R. at 154. The Nation has done so, and the Crownpoint District Court therefore erred when it dismissed the Nation's complaint upon the determination that an equitable lease exists.

## VI

The final question is one the district court did not consider: whether the Nation can collect rent from Alonzo. We must remand the case for the district court to make that determination. However, this Court provides the following guidelines. As Alonzo is not a successor, he is not a party to the lease. It follows that he is not bound by the obligation to pay rent pursuant to the lease terms. If the Nation wishes to pursue unpaid rent accrued during the term of the lease, it must seek it from the actual contracting parties. In this case, because the parties of the lease are deceased, the Nation must bring a separate action against the estate/s of the deceased parties. However, as Alonzo is one of the persons who, as concluded in this opinion, has illegally occupied the property since the expiration of the lease, the Nation must decide whether to seek post-lease rent from him. If the Nation seeks rent, Crownpoint District Court must determine the amount on remand.

For the above reasons we VACATE and REMAND this case to the Crownpoint District Court. The district court shall issue a writ of restitution ordering Alonzo Arviso's removal from the property and, if the Nation seeks rent, for a determination of rent.