OPINION

This is the second appeal in this matter. In the first appeal, this Court reversed the Navajo Nation Labor Commission (NNLC) and held that the appellee violated the Navajo Preference in Employment Act (NPEA) by breaching an employment contract. On remand, the NNLC awarded damages but denied the appellant’s request for costs and attorney’s fees. Mr. Goldtooth appeals the denial of costs and fees.
I
The facts of the case are as follows: During the 2000-01 academic year, Mr. Goldtooth was employed as a computer technician at Naa Tsis’ Aan Community School (NCS) under a one year, renewable contract. In April 2001 the Executive Director sent Mr. Goldtooth a letter offering a new contract for the 2001-02 academic year. The employment offer was sent without the approval of the School Board, as required by school policy. Mr. Gold-tooth signed and returned the contract to the Executive Director on April 19, 2001. In May 2001 the School Board rescinded the offer of employment, declared Mr. Goldtooth’s contract void and terminated his employment. To Mr. Goldtooth’s complaint that he was terminated without just cause, the NNLC concluded that Mr. Gold-tooth had no contract and upheld the termination. On appeal, this Court reversed the decision of the NNLC holding that the Executive Director acted as a naat’áanii who had apparent authority to offer the employment contract. Goldtooth v. Naa Tsis’ Aan Community School, 8 Nav. R. 682, 6 Am. Tribal Law 667 (Nav.Sup.Ct.2005) [hereinafter Goldtooth I], The Court held that this contract became binding upon Mr. Goldtooth’s acceptance. The Court remanded the case to the NNLC for determination of damages.
At the second hearing, Mr. Goldtooth was awarded damages for lost wages, costs related to finding other employment, moving costs, and cost incurred while attending NNLC hearings. The NNLC, however, did not award attorney fees upon the finding that NCS’s action of rescinding Mr. Goldtooth’s contract was substantially justified. Mr. Goldtooth appealed once again, disagreeing with NNLC’s reading and application of 15 N.N.C. § 612(A)(2). Oral argument was held on February 20, 2009 in Kayenta.
II
The issue is whether the NNLC abused its discretion in denying costs and attorney’s fees.
III
This Court reviews NNLC’s decision under an abuse of discretion standard. Toledo v. Bashas’ Diné Market, No. SC-CV-41-05, 6 Am. Tribal Law 796, 798 (Nav.Sup.Ct. August 17, 2006). One *156 type of abuse.of discretion is an erroneous interpretation of law. Id. The interpretation of the mandatory language contained in the first part of ló NNC S 612(A)(2) together with the latter contingency provision is a question of law. The Court reviews such questions de novo, with no deference given to the NNLC’s decision. Id.; Milligan v. Navajo Tribal Utility Authority, No. SC-CV-31-05, 6 Am. Tribal Law 731 (Nav.Sup.Ct. March 23, 2006).
IV
The Court reviews this matter against the backdrop of the long established rule that each party in litigation is responsible for their own attorney’s fees.[1] Hall v. Arthur; 3 Nav. R. 35, 41 (Nav.Ct.App.1980). Three exceptions to the rule have been recognized, to wit: 1) when a statute provides for attorney’s fees; 2) when the case presents a special set of circumstances; and 3) if a pleading or documents is not submitted in good faith, or it contains material misstatements of fact or law, or it is not made upon adequate investigation or research. Yazzie v. Herrick, 5 Nav. R. 129, 131 (Nav.Sup.Ct.1987).
The claim for attorney’s costs and fees in the present case is made pursuant to 15 N.N.C § 612(A)(2). This statutes reads, “[i]f, following notice and hearing, the NNLC finds that respondent has violated the Act, the NNLC shall ... [i]n the case of an individual suit initiated pursuant to § 610(H), award costs and attorneys’ fees if the respondent’s position was not substantially justified." 15 N.N.C § 612(A)(2) (2005) (emphasis added).
The language of the statute informs the reader of the fact that the law comes in two parts. The first part of the statute is a mandate that the NNLC shall award attorneys fees to an employee who has prevailed on his or her complaint. The second part of the law is a contingency on the mandate. The contingency is that the award is not to be made if the employer’s position was substantially justified. The juxtaposition of the mandate and the contingency with undefined terms is the root of the confusion and ambiguity.
Under the Dine principle of rid bináheezláago bee t’áá lahfi algha’ deet% disputes are to be addressed in a comprehensive manner so as to achieve finality. Casaus v. Diné College, No. SC-CV-48-05, 7 Am. Tribal Law 509, 513 (Nav.Sup.Ct. March 8, 2007); Navajo Nation v. Kelly, No. SC-CR-04-05, 6 Am. Tribal Law 772, 777-78 (Nav.Sup.Ct. July 24, 2006). Pursuant to this principle, it is necessary to read and interpret statutes as a whole. This principle is consistent with the bila-gáana rule of statutory construction that all parts of the statute must be given meaning. In other words, the statute must be read as a whole. This bilagáana rule has also been used by our courts. In re Claim of Joe, 7 Nav. R. 66, 67-68 (Nav.Sup.Ct.1993); Kescoli v. Anderson Security Agency, 8 Nav. R. 724, 731 (Nav.Sup.Ct.2005). Under this principle and rule, we hold that by stating the first part of the law as a mandate, the legislature cleaiiy wanted to provide an exception to the general rule that parties in litigation are responsible for their own attorney’s fees and costs. As to the contingency, the legislature recognized that there may be occasions when the mandate should not be imposed. We recognize that there is a need for guidelines as to what is meant by substantially justified and the appellant asks the Court to clarify “respondent’s position.”
*157 v
It is established that “the respondent’s position” means the employer’s litigating position. Dilcon Navajo Westerner/True Value Store v. Jensen, 8 Nav. R. 28, 41, 2 Am. Tribal Law 502 (Nav.Sup.Ct.2000). So what does litigating position mean? Mr. Goldtooth argues that it should extend beyond the position(s) taken for litigating purposes; that the employer’s overall conduct during the proceedings should be considered. Mr. Goldtooth asserts that all of the following conduct should be considered and that this conduct in totality should suffice for this Court to deem that NCS’s position was not substantially justified. NCS argued that Mr. Goldtooth’s complaint was untimely filed (that claim was eventually denied); that there was no contract (this Court overruled that claim); that even if there were a contract, Mr. Goldtooth was not a certified instructor (yet this was not used as a reason for ending his employment); that NNLC chose to ignore this Court’s conclusion in Goldtooth I that NCS violated the NPEA and still denied attorney’s fees on remand (and therefore, NNLC should not be accorded any deference); and that NCS did not challenge or object to the hourly rate for attorney’s fees nor the amount of time spent on litigation, but challenged only the portion of the fees incurred for appellate work (and therefore conceded that an award can be made.)
NCS essentially takes the counter position that the Court need only review the employer’s reasons. The argument by NCS is that its opposition to the Appellant’s complaint (litigating position) is substantially justified because it is clear that the school board’s duty is to approve hir-ings and that it did not approve the hiring of Mr. Goldtooth. The school board also emphasized that at the time it took its litigating position it had no knowledge that their Executive Director would be considered a nuatáanii and that under traditional concepts of a naatáann, he would have authority to offer a legally binding contract. NCS argues that these actions are sufficient reasons or explanations that would cause a reasonable person to conclude that there was sufficient justification for its litigating position.
The Court holds that 1) because, first and foremost, Section 612(A)(2) mandates an exception to the general rule, the employer’s defense against the employee’s claim alone cannot obviate the mandate—the employer’s litigating position alone cannot swallow the mandate; 2) that the overall conduct of a respondent-employer, including pre-litigation conduct, wall be considered in the decision whether the employer’s litigating position was substantially justified; and 3) that the overall conduct of the employer wall be reviewed under a reasonable person standard. To this extent, this Court’s interpretation in Jensen that respondent’s position means employer’s litigating position is clarified.
VI
Just what does “substantially justified” mean? This particular term is not defined under the NPEA nor has it been defined through rules and regulations; therefore, the phrase is not clear. The only precedent we have on this question is where a respondent employer was held not substantially justified for refusing to participate in the administrative hearing proceedings. Loley v. Department of Employment and Training, 7 Nav. R. 406, 410, 2 Am. Tribal Law 459 (Nav.Sup.Ct.1999). The Court’s determination in Part V, s upra, as to the scope of the employer’s conduct that will be reviewed to determine the employer’s litigating position provides the premise for defining what substantially justified means. The Court holds that the *158 employers overall conduct will be weighed against the statutory mandate; i.e., does the employer’s overall conduct justify nullifying the mandate that a prevailing employee shall be paid costs and attorney’s fees? The Court further holds that because this exercise is a weighing of the reasonableness of each party’s conduct, the award of costs and attorney’s fees is not an all or nothing proposition.[2]
The Court will use one of the guidelines provided in Yazzie v. Herrick, and the Loley precedent, as modified, to refine the definition. We hereby hold an employer shall be deemed “substantially justified” as that term is used in 15 N.N.C § 612(A)(2) when the respondent-employer shows 1) that the employee’s pleading or document was not submitted in good faith, or that it contains material misstatement of fact or law; or that it is not made upon adequate investigation or research or 2) that the employee failed to participate in the proceedings. We emphasize that such exceptions and the substantial justification decision must be established by specific findings by the NNLC. Largo v. Gregory & Cook, 7 Nav. R. 111, 119 (Nav.Sup.Ct.1995). See Navajo Nation v. Badonie, 8 Nav. R, 507, 509, 5 Am. Tribal Law 416 (Nav.Sup.Ct.2004) (findings of fact in criminal judgment required); Burbank v. Clarke, 7 Nav. R. 369, 372, 2 Am. Tribal Law 424 (Nav.Sup.Ct.1999) (findings of facts in civil cases required); Charlie v. Benally, No. SC-CV-19-07, 7 Am. Tribal Law 647, 652 (Nav.Sup.Ct. December 10, 2008) (meaningful judicial review cannot occur if the lower quasi-judicial tribunal does not provide reasons why it decided a certain way and not another); Begay v. King, No SC-CV-51-06, 2009 WL 1074263, «2-3 (Nav.Sup.Ct. April 13, 2009) (final judgment of the Office of Hearings and Appeals was without adequate findings of facts to support its legal conclusion). The Court’s holding herein provides two exceptions to the statutory mandate.
The Court now applies the new definition of “substantially justified” to the present case. First, it is obvious that exceptions 1 and 2 do not apply. We hold that NCS’s explanation of its litigating position, as described above, does not outweigh the statutory mandate and the overall conduct of NCS as described in Part V, supra, justifies an award of costs and attorney’s fees.
VII
The NNLC has the duty to decide how to handle costs and attorney’s fees whenever the employer is found to have violated NPEA, regardless of whether the party has raised it as a claim or not. It is an affirmative obligation by the NNLC to consider costs and attorney’s fees. Largo at 118. Therefore, the Court is especially concerned that the NNLC ignored this Court’s opinion in Goldtooth I that there was a violation of NPEA by NCS. Once a violation of NPEA is found, the statutory mandate follows—the NNLC cannot choose to ignore it. The Court also holds that NCS only objected to the award of costs and attorney’s fees for the appellate work and that this objection only related to whether the NNLC or this Court can make the award. The Dine principles of bit ch’iiniya (one has lost an opportunity), see In re Estate of Kindle, No. SC-CV-40-05, 6 Am. Tribal Law 750, 755 (Nav.Sup.Ct. May 18, 2006), and “words are sacred and never frivolous in Navajo thinking” (hazaad jidisin), see Smith v. Navajo Nation Department of Head Start, *159 8 Nav. R. 709, 715, 6 Am. Tribal Law 683 (Nav.Sup.Ct.2005), dictate that NCS waived and/or conceded that costs and attorney’s fees can be awarded in this case.
The NNLC’s written decision lacks the necessary specific findings to indicate why the NNLC believed that NCS’s position was not substantially justified. The mere conclusion whether the employer’s litigating position is substantially justified or not substantially justified does not meet the requirement for specific findings. The failure to make specific findings is an error. This Court hereby modifies the NNLC’s decision and remands only the issue of costs and attorney’s fees incurred from September 15, 2005 to date.
VIII
Under the circumstances of this case, the Court, rather than having one party solely assume all costs and attorney’s fees, orders that all costs and attorney’s fees incurred by Mr. Goldtooth shall be shared equally by both parties. As to the claim of attorney’s fees in the amount of $8,770.60 filed with NNLC for expenses incurred through September 14, 2005, NCS is hereby ordered to pay $4,385.30 to Mr. Goldtooth. As to costs and attorney’s fees incurred from September 15, 2005 to date, the Court orders Mr. Goldtooth to submit a statement of cost and fees to the NNLC by April 23, 2009. The NNLC will allow NCS to respond to the claim by April 30, 2009 and render a decision requiring NCS to pay half of the determined costs and attorney’s fees.

. This is the default rule when the employee does not prevail in his or her complaint.

. In a direct question to the parties at oral argument, it was conceded that a claim for costs and attorney's fees is not an all or nothing proposition.